IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Peter Goldman, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 C 50004 |
| | ) | |
| vs. | ) | |
| | ) | |
| Village of Oakwood Hills, et al., | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, defendants' motion [14] to dismiss is granted. Counts I and II are dismissed without prejudice. Plaintiff is given until July 13, 2018 to file an amended complaint. If he fails to do so, the dismissal of Counts I and II will convert automatically to a dismissal with prejudice and judgment will enter on those counts. Because the dismissal with prejudice would then dispose of all the federal claims, the court would decline at that time to exercise supplemental jurisdiction over the state law claim (Count III) and the state law claim will be dismissed without prejudice at that time.

## STATEMENT-OPINION

Plaintiff, Peter Goldman, brings this action against defendants, Village of Oakwood Hills ("Village") and Paul Smith, in his individual capacity and in his official capacity as the president of the Village, asserting claims under 42 U.S.C. § 1983 for a denial of due process (Count I) and retaliation for exercising his First Amendment free speech right (Count II). He also alleges an Illinois state law claim under 820 ILCS 305/4(h) for retaliatory discharge for filing a workers' compensation claim (Count III). Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 & 1367(a). Defendants move [14] to dismiss counts I and II for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The following facts are taken from the complaint. Plaintiff began working for the Village as a police officer on February 19, 2001. He was appointed the Village's chief of police in May 2013. In an effort to improve the police department, plaintiff published an internet survey which requested the Village's police officers to respond to questions about the police department and its operations.[1] The survey responses were provided to Smith, the Village's president, without the names of the officers who responded. The responses were critical of Smith and his operation

---

[1] The complaint does not allege the date the survey was published.

1

of the police department. On October 4, 2016, Smith responded to the survey to plaintiff. Smith was upset with the responses provided and demanded, under threat of discipline, that plaintiff address and eliminate what Smith perceived to be misconceptions. Smith accused plaintiff of being involved in inviting negative responses about Smith's handling of the police department and his failure to take disciplinary action against an employee.

On October 14, 2016, plaintiff sustained a work-related injury as a result of a motor vehicle accident. Plaintiff sustained injuries to his head, arm, ribs, neck and back. The Village paid plaintiff temporary total disability benefits while he was off work and getting medical treatment for his injuries. Defendants were aware plaintiff had a work-related injury, that he filed a claim with the Illinois Workers' Compensation Commission, and that he continued to treat for his medical condition. Smith was upset that plaintiff had been injured and was not able to return to work.

In January 2017, while plaintiff was still off work, Smith sent him several letters requesting he step down as police chief and indicating Smith had boxed up all plaintiff's personal items and requested plaintiff return all Village property, commission card, and badge. Smith later told plaintiff to disregard the termination notice and that he was still employed but unable to work because of medical conditions.

On or about February 6, 2017, after removing plaintiff from the chief of police position, Smith requested plaintiff return police issued items in his possession despite the fact he was still employed by the police department. On or about February 8, 2017, Smith appointed a new police chief. Plaintiff was removed from the police department roster after appointment of the new chief. On July 7, 2017, without prior notice, the Village terminated plaintiff's police employment despite its knowledge he was still under treatment and unable to work due to his work-related injuries. He was terminated via letter from the Village's counsel, Lisa Waggoner. Smith was the decision-maker responsible for terminating plaintiff. Smith terminated plaintiff without notice or providing plaintiff an opportunity to respond to any alleged employment or disciplinary issues. The alleged basis for plaintiff's termination was because of "violations of several policies." Plaintiff was never notified, questioned, or provided any due process regarding any alleged policy violations. The Village never conducted any type of investigation and did not give plaintiff an opportunity to contest any allegations of misconduct. On or about July 18, 2017, defendants terminated plaintiff's benefits under the Illinois Workers' Compensation Act.

Plaintiff alleges in Count I his employment as a police officer was governed by the rules, regulations, and policies of the Village and that those policies require a due process procedure to show cause prior to termination. He alleges these procedures of the Village give him a property interest in his continued employment which was wrongfully taken away without due process.

Plaintiff alleges in Count II that his publishing of the internet survey and his sustaining a work-related injury were protected activities under the First Amendment and speech on matters of public concern. He contends he was a victim of retaliation by defendants, in violation of his

2

right to free speech, because of his involvement with the internet survey as well as because of his sustaining a work-related injury. Among the allegedly retaliatory acts were failure to conduct an investigation of the allegations against plaintiff, failing to afford him notice or a hearing prior to his termination, terminating him from his position as a police officer, restricting him from obtaining continuation of salary and benefits as a result of his disabling work-related injuries.

Defendants seek dismissal of Count I arguing plaintiff was an at-will employee, did not have a property interest in his job with the Village and, therefore, had no right to due process prior to being terminated. Plaintiff alleges that Village policy required a showing of cause for termination in a due process hearing before plaintiff could be terminated and that this gave plaintiff a property interest in his continued employment with the Village.

Section 2-1501 of the Village's code of ordinances provides: "All Police Department positions for Chief of Police, Supervisory ranks, patrol officers and civilian employees, whether full- or part-time employees, are at will positions." Oakwood Hills, Ill., Code § 2-1501. Defendants argue that this police department-specific section making police department employment at-will controls over any ordinance dealing generally with Village employees and officers. Plaintiff maintains, despite this provision, that he had a property interest in his job because: 1) Section 2-108 and Section 2-1003 of the Village's code of ordinances establish that he could only be dismissed for cause; 2) his official commission card indicated his appointment as a police officer ran until "at least May 3, 2018" and 3) a police department policy dated September 29, 2003 established he could only be terminated for cause. Even if the court considers the ordinances and documents cited by plaintiff, none of them alter the at-will nature of plaintiff's employment as established by Section 2-1501.

"Even when required by statute or ordinance, purely procedural rules of state and local law give rise to constitutionally protected interests only when the mandated procedure contains within it a *substantive* liberty or property interest. In other words, the federal Constitution does not enforce compliance with state procedural rules." Manley v. Law, 889 F.3d 885, 893 (7th Cir. 2018) (citations omitted). "[A] government promise that an employee can be fired only for good cause creates a substantive right in secure employment, whether or not the government provides procedures to enforce that right. By contrast, a rule that merely provides procedures to be followed does not include a substantive right if the procedures protect nothing more than employment that can be terminated at will." Id. (quotation marks and citations omitted).

Section 2-108 provides that the "Village President may remove any appointed officer, whenever the Village President is of the opinion that the interests of the Village demand removal." The ordinance provides that the Village President "shall report written reasons for the removal to the Board of Trustees at a meeting to be held not less than five (5) nor more than ten (10) days after the removal." It further provides that every "appointed officer and employee of the Village, upon the termination of his term for any cause whatsoever, shall deliver to the Village President or Village Clerk, within five (5) days, all property, books, and records of the Village."

3

Plaintiff argues that the phrase "for any cause whatsoever" used in the last sentence of Section 2-108 establishes that he could not be terminated except for cause. However, it is clear the final sentence of 2-108 deals only with Village employees' obligations to return Village property when they leave Village employment. The first sentence of 2-108 makes clear that the Village President may remove any appointed officer when the president "is of the opinion" it is in the Village's interest that such officer be removed. Nothing in this language suggests the president's opinion of the Village's interest is subject to any proof requirement. The section provides that the removed officer "shall be restored" if the president "fails or refuses to report" the reasons for the removal or if the board by a two-thirds vote disapproves of the removal. While the ordinance requires the board to be notified of the removal, and gives the board the right to disapprove the removal by super-majority vote and restore the officer, nothing in the ordinance requires any action by the board to effect the removal nor does it require the president to have "good cause" for the removal. Section 2-108 did not give plaintiff a property interest in his employment with the Village.

Section 2-1003 provides that every "appointive officer of the Village shall hold office until the first of May or the first regular or special meeting of the corporate authorities during the month of May following their appointment or until a successor is appointed and qualified, unless it is otherwise provided by ordinance." Plaintiff contends that this section gives him a property interest in his employment through the first village board meeting in May 2018, as he was appointed (as reflected on his commission card) on May 4, 2017. However, as discussed above, Section 2-108 allows the Village President to remove "any appointed officer" when the president is of the opinion it is in the Village's interest that the officer be removed. Thus, "it is otherwise provided by ordinance," that an appointed officer's holding "office until the first . . . meeting of the corporate authorities during the month of May following their appointment" (Section 2-1003) is subject to the officer being removed prior to that date by the Village President as provided in Section 2-108. Since appointment under Section 2-1003 is subject to removal pursuant to Section 2-108, Section 2-1003 did not give plaintiff a property interest in his employment with the Village through May 3, 2018.[2]

Plaintiff contends a written policy of the Village's police department dated September 29, 2003, which he appends to his brief, creates a property interest in his employment with the Village. However, nothing in the policy creates a right to be discharged only for good cause. The policy sets forth a procedure for counseling and discipline for sworn employees of the police department. The policy provides: that "[a]ll completed reports of discipline shall be forwarded to the Chief of Police for final disposition" and that "[d]iscipline reports shall be disposed of by the Chief of Police in the following manner, regulated by severity of the violation, unless otherwise dictated by the Police Officer's Disciplinary Act:

a. Verbal reprimand with written documentation

---

[2] Likewise, plaintiff's commission card does not establish a property interest in plaintiff's employment as it, at most, shows plaintiff was appointed per Section 2-1003.

4

b. Written reprimand

b (sic). Suspension of duty

c. Filing of formal charges for termination of employ."

Nothing in this policy purports to alter the at-will nature of police department employment as established by Section 2-1501 of the Village Code. To the extent the policy creates any procedures it merely provides procedures that "protect nothing more than employment that can be terminated at will," Manley, 889 F.3d at 893, and thus, does not create a substantive property interest. Id. The "federal Constitution does not enforce compliance with state [or local governmental] procedural rules." Id.

Turning to Count II, for a public employee's speech to be protected under the First Amendment, the employee "must demonstrate that (1) he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." Davis v. City of Chicago, No. 16-1430, 2018 WL 2107586, *2 (7th Cir. May 8, 2018) (quotation marks and citations omitted). "Whether an employee speaks as an employee or a citizen depends on whether the speech was made pursuant to his official duties. The inquiry is a practical one that goes beyond a written job description. The employee's official duties include both formal job requirements and the employer's real rules and expectations." Id. (quotation marks and citations omitted.)

Plaintiff alleges that "[i]n an effort to improve the police department, Plaintiff published an internet survey which requested officers to respond to questions about the police department and its operations" and that the "survey responses were provided to Smith." Section 2-1503 of the Village's code of ordinances, entitled "Duties and Authority of the Chief of Police," provides that the chief of police has "authority to supervise all members of the Police Department" and to "make recommendations to the Village President and Board of Trustees . . . concerning the operations thereof." Oakwood Hills, Ill., Code § 2-1503. Promulgating a survey, soliciting responses to it from Village police officers and then delivering the responses to the Village President are all actions that fall squarely within the authority conferred on the chief of police by this ordinance. Plaintiff was speaking as an employee and not as a private citizen when he provided the survey to his officers and reported their responses to Smith. Accordingly, this speech was not protected under the First Amendment. Without clearing the first hurdle, speaking as a private citizen and not as an employee, the fact that the speech may have addressed a matter of public concern is insufficient to save plaintiff's claim. Davis, 2018 WL 2107586 at *2.

Plaintiff also alleges in Count II that "sustaining a work related injury [was] protected activit[y] under the First Amendment and was speech on a matter of public concern." In his brief, plaintiff clarifies that it is his filing a claim for workers' compensation benefits for his work injuries (not the sustaining of those injuries) that he claims was his protected speech.

5

Defendants argue plaintiff's claim for workers' compensation benefits is not speech addressing a matter of public concern and thus the First Amendment does not protect him from retaliation for making this claim.[3]

Plaintiff argues defendants' "motion to dismiss Count II of the complaint must be denied as Plaintiff's allegation he was retaliated against because of his speech pertaining to filing a claim for workers' compensation benefits was properly plead and not disputed at this stage of the litigation by the Defendant." However, the complaint did not allege that filing a workers' compensation claim was plaintiff's protected speech. The complaint alleged that plaintiff's sustaining a work-related injury was the protected speech. It was only in his response brief that plaintiff clarified it was filing the claim not sustaining the injuries that he was claiming to be his protected speech. Defendants were not required to address a claim not made in the complaint. Once plaintiff clarified his claim in his brief, defendants responded to it and the court will now address it.

"Whether a statement is a matter of public concern is a question of law for the court." Bivens v. Trent, 591 F.3d 555, 560 (7th Cir. 2010). "[I]f the speech concerns a subject of public interest, but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern." Id., at 561 (quotation marks and citations omitted)(emphasis in original). "To resolve whether a personal grievance nonetheless raises to the level of public concern, it is necessary to look at the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" Id. (quotation marks and citations omitted).

Plaintiff's filing a workers' compensation claim was pursued to further a "purely private interest." Plaintiff does not allege otherwise. He does not allege any speech beyond filing a claim to obtain his statutorily created right to compensation for his work injuries. He does not allege he made any statements concerning any wrongdoing on the part of defendants concerning his or an any other employees' workers' compensation claims. He simply alleges that he was injured, filed a claim for compensation for the injuries, was paid temporary total disability compensation, and, eventually was fired. While these allegations state a claim under Count III for a violation of the state statute, they do not state a claim for any First Amendment violation. Plaintiff has not alleged a plausible claim that he did anything other than pursue his private interest in receiving compensation for his work injuries.

"Ordinarily, ... a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago. & Northwest Indiana, 786 F.3d 510, 519 (7th Cir. 2015). While it seems unlikely, given the facts alleged, that

---

[3] Defendants acknowledge that Illinois law (820 ILCS 305/4(h)) prohibits retaliation for filing a workers' compensation claim. Defendants have answered Count III of plaintiff's complaint which alleges retaliatory discharge in violation of this Illinois statute.

plaintiff will be able to state a federal claim, the court will allow plaintiff time to file an amended complaint to attempt to do so if he wishes.

      For the foregoing reasons, defendants' motion [14] to dismiss is granted. Counts I and II are dismissed without prejudice. Plaintiff is given until July 13, 2018 to file an amended complaint. If he fails to do so, the dismissal of Counts I and II will convert automatically to a dismissal with prejudice and judgment will enter on those counts. Because the dismissal with prejudice would then dispose of all the federal claims, the court would decline at that time to exercise supplemental jurisdiction over the state law claim (Count III) and the state law claim will be dismissed without prejudice at that time.

Date: 6/19/2018	ENTER:

*Philip G. Reinhard*
United States District Court Judge

Electronic Notices. (LC)